DOANE v. BIGGS.

1. Drains—Proceedings to Establish—Eminent Domain—Notice of Citation.

In proceedings to determine the necessity for a drain and to award compensation for land taken therefor, where a railroad company had agreed, before citation issued, to give a right of way across its lands for the drain, and later did so, other owners whose lands were traversed by the drain could not complain that notice of citation was not served upon said railroad company.

2. Same—Prepared Verdicts—Aid to Jury.

In such proceedings the giving to the jury of prepared verdicts without the knowledge and consent of defendants and their attorneys, held, to be simply forms, and intended as aids to the jury under Act No. 254, Pub. Acts 1897 (1 Comp. Laws 1915, § 4870 et seq.), and in no way harmful.

3. Same—Sufficiency of Outlet—Appeal and Error.

Where abundant opportunity to offer proof as to the insufficiency of the outlet of the drain was afforded objectors, but no proof was offered, there is no ground for complaint.

4. Same—Technical Errors No Cause to Set Aside Proceedings.

Proceedings for the establishment of a drain will not be set aside for technical errors which do not amount to substantial defects.

Error to Ingham; Snow, J., presiding. Submitted April 9, 1919. (Docket No. 15.) Decided May 29, 1919.

Proceedings by E. J. Doane, drain commissioner of Ingham county, against Frank Biggs and others for the establishment of a drain. The necessity of said drain was determined in the probate court, and defendants appealed to the circuit court by writ of certiorari. Judgment for plaintiff. Defendants bring error. Affirmed.

*Avery, Cairns & Carbaugh,* for appellants.

*William M. Smith* and *William C. Brown,* for appellee.

MOORE, J.   Prior to May 23, 1917, proceedings were taken by E. J. Doane, drain commissioner, to establish a drain known as the "Deer Creek drain," which, if constructed, would pass through portions of the townships of Ingham, Wheatfield, and Williamstown.  Some time prior to the 23d day of May, a citation was served upon Frank Biggs, Bert F. Hammond, Jacob Hahn, A. M. Oesterle, and F. W. Hammond and other landowners, who had not given right of way for said drain, to appear upon the 23d day of May, 1917, before the probate court of Ingham county, to show cause why commissioners should not be appointed to determine the necessity for said drain and to award compensation for the lands to be taken therefor.   On the 23d day of May, 1917, said defendants appeared by their attorneys, and by agreement the hearing was adjourned until the 6th day of June, 1917.   On the 6th day of June, 1917, defendants appeared and moved the court to dismiss all proceedings in said "Deer Creek drain" matter for the following reasons:

1. That no notice was served upon the Pere Marquette Railway Company whose lands would be crossed by said drain and who had not granted a right of way.

2. That a proper and sufficient outlet for said proposed drain had not been provided.

Both of these objections were overruled.   Thereupon the attorneys for defendants filed with the court a demand for a jury, and the proceedings were adjourned until the 16th day of June, 1917.   On June 16, 1917, said defendants again appeared in court by their attorneys, a satisfactory jury was obtained and the oath was administered to the jurors.   Such other

proceedings were had that the necessity for the drain was duly established, and the damages awarded to the petitioners in this case were as follows:

1. To F. W. Hammond for the right of way across one piece of land, $170.

2. To A. M. Oesterle and wife for the right of way across one piece of land, $180.

3. To Jacob Hahn for the right of way across one piece of land, $112.

4. To Bert F. Hammond and wife for the right of way across one piece of land, $155.

5. To Jacob Hahn for the right of way across one piece of land, $.06.

6. To Frank N. Biggs for the right of way across one piece of land, $500.

7. To Frank N. Biggs for the right of way across one piece of land, $25.

The petitioners reviewed the proceedings by certiorari in the circuit court. The judge filed a written opinion from which we quote as follows:

"The demandants are some of the owners of lands to be traversed by said proposed drain who did not sign releases of rights of way, and the jury was secured in the manner provided by law to determine the necessity for the drain and for the taking of private property for the use and benefit of the public for the purpose thereof, and to appraise and determine the compensation to be made to the several owners or parties interested in the real estate proposed to be taken for the right of way and damages of said drain.

"Several objections are raised by the demandants to the regularity of the proceedings after the jury was secured and such of those objections as the court feels are worthy of consideration are hereby reviewed.

"It is the claim of the demandants that section 4888, 1 Comp. Laws 1915, has not been complied with, and that by reason thereof the probate court has no jurisdiction of the matter and that all subsequent proceedings are void. The section referred to is as follows:

"'The jury or special commissioners may adjourn such hearing from day to day, for any cause, not exceeding in all ten

days, announcement of which adjournment shall be then and there publicly made.'

"Respondent's return shows that the jury, on demand of demandants, was selected on the 16th day of June, 1917, and that after the organization of the jury on said day the probate judge publicly announced in the presence of the jury that the jury should advise him from time to time of their progress in examining the line of the drain. The judge at that time also announced that the jury would convene on June 26, 1917, at the probate office in Mason to proceed to view the route of the drain, and that said cause so far as the taking of testimony was concerned would be adjourned to June 30, 1917, at 10 o'clock the forenoon of said day, at the probate office in Mason, at which time it would be determined when testimony would be taken, as the jury would by that time be able to view the route of the drain. This statement of the court was made in the presence of the jury, although it is denied in the return that the jury adjourned the hearing of said matter until the 30th.

"Later upon request of the probate judge the jury came together on the 21st of June, and on that day and the two following days, viz:: the 22d and the 23d, proceeded to go over the route of the drain and view the premises, and hear testimony in regard to the matters to be determined on the 25th and 26th of June and on the 30th of June made the report of their findings to the probate court, determining the necessity of the drain and awarding compensation and damages to the various land owners who had not released rights of way.

"The return of respondent, the probate judge, shows conclusively that each and all of the objectors to the drain and the demandants herein had actually written notice of each and every one of the proceedings and actions of the jury. They all had written notice served upon them of the days when the jury would go over the proposed route of the drain; they all had written notice served upon them of the day set for the taking of testimony, and each and every of the demandants knew exactly when the jury would view the premises and what day the jury had set for the taking of testimony. None of the demandants or those who had

not signed a right of way was taken by surprise or did not know in plenty of time to look after and protect their rights before the jury. Their rights were safeguarded and protected in every way and every party in interest had actual notice of the time set for viewing the premises and taking testimony. The attorneys for the parties in interest also had actual notice of the proceedings; and no injury was done any one by viewing the premises and taking testimony on the days the jury decided upon; in fact no claim is made on the part of the demandants that they were in any way taken by surprise or but they had ample time to look after and protect their rights before the jury. They do not claim they were unable to be present on the days set or that they were unable to procure the attendance of their witnesses, but admit they were fully cognizant of what was being done, and could just as well have taken part in the proceedings as not. In fact they had present at the hearing a stenographer who took notes of the proceedings of the hearing.

"Additional complaint is made that some testimony was taken on June 30th, the day the jury filed the report with the probate court. On this day all parties, with their attorneys were present and some of the demandants were called upon by the prosecuting attorney to testify, after which the jury retired and made its report as provided by law.

"In the opinion of the court these proceedings were regular and in accord with the provisions of the statute referred to. The route of the drain was gone over, testimony was taken, and the report of the jury was made all within the fifteen days provided by law, viz., from the 16th day of June, 1917, when the jury was secured, to the 30th day of June, 1917, when the report was made and filed.

"'The law in effect provides that the jury shall, after its proper selection, proceed to its hearings and determinations of the questions for its consideration, independent of the probate judge, and the fact that the probate judge saw fit to call the jury in on the 21st, in order that matters in issue might be determined and the report made within the fifteen days provided by law for such purposes, in no way affects the validity of the proceedings of the jury.

"From the facts disclosed by the return, the court is of the opinion that the demandants had no desire or intention of securing a fair determination by the jury as to the necessity of the drain and the damages, if any, to be awarded, but elected rather to take the strained technical position that the jury could not proceed on any other day than that suggested by the probate court, which was the 26th day of June, for the purpose of going over the route of the drain and the 30th of June for the purpose of taking testimony. The court was not ousted of jurisdiction in making this announcement as to the date of proceedings, and in the judgment of the court the jury was within the strict letter of the law in fixing the earlier dates. * * *

"Demandants also complain that only eleven of the jurors viewed the proposed route of the drain on the 21st, but claim that the other juror had no right to go over any part of the drain alone, notwithstanding the fact that on the 22d the jury was all together and made return that each and all of the jurors viewed all of the proposed route either together or as above stated. While it is desirable that the jury view the premises together, the fact that one of the jurors looked over a portion of it not in the presence of the other eleven is not in violation of any statute, and in the opinion of the court is not such an irregularity as would make their determination a nullity.

"In this connection it may be stated that there is no claim of misconduct or any influence on the part of any one being brought to bear on any member of the jury, and no claim is made that any injury was occasioned thereby.

"The further claim is made that the probate court did not keep a proper record of its proceedings. The court finds that the probate court did in fact keep such records of the proceedings as the law contemplates. There is no claim in this matter that all the proceedings throughout do not fully appear. * * *

"The court is of the opinion that the statute had been strictly complied with; that none of the demandants have been injured in any degree; that they were given every right to have their matters determined in court before the jury, and that they are, without sub-

stantiai reason, attempting to obstruct and delay a necessary public improvement."

Counsel raise the following questions in this court:

1. Did the probate court err in not adjourning the hearing upon the application for the appointment of commissioners until notice of the citation had been served upon the Pere Marquette Railway Company, or until a release of right of way had been secured by the drain commissioner from the Pere Marquette Railway Company?

2. Did the probate court err in refusing to hear proof as to the insufficiency of the outlet of the drain?

3. Did the probate court err in reconvening the jury at an earlier date than the adjourned day without the consent of the defendants and in the absence of a stipulation between the parties litigant?

4. Did the court err in holding that the notice served on the defendants on the 21st day of June, 1917, that the jury would convene upon said 21st day of June, 1917, was a reasonable, ample and sufficient notice?

5. Did the jury and the probate court lose jurisdiction by the jury reconvening at an earlier date than the day to which said jury had adjourned for the purpose of taking testimony, in the absence of any stipulation between the parties litigant?

6. Did the jury and probate court lose jurisdiction by adjourning the hearing before the jury from time to time from the 16th day of June, 1917, to the 30th day of June, 1917?

7. Did the probate court and the jury lose jurisdiction of the proceedings by the jury viewing the premises to be taken for said proposed drain separate and apart, and by one of the jurors viewing said premises in company of the son of the drain commissioner and not in charge of an authorized officer?

8. Was prejudicial error committed by the prepared verdict being handed and passed to the jury without the knowledge and consent of the defendants or their attorneys?

9. Were the original files which were filed with the probate court such a record of the drain proceedings as are contemplated and required by the statute?

As to the first of these contentions the return shows that before the citation was issued the Pere Marquette Railway Company had agreed to give a right of way and did so on June 22, 1917. This point was passed upon contrary to the contention of the petitioners in *Hauser* v. *Burbank,* 117 Mich. 642.

Was prejudicial error committed by the prepared verdict being passed to the jury without the knowledge and consent of the defendants or their attorneys? The record shows the defendants and their attorneys had left the court room when these papers were given to the jury. That they were simply forms to be used. One form would be useful in case the jury found there was a necessity for the drain and the other in case there was no necessity. In what was done by the probate judge as to these papers there was no suggestion by him as to what the jury should do. They were intended as aids to the jury and were in no way harmful. See Act No. 254, Pub. Acts 1897 (1 Comp. Laws 1915, § 4870 *et seq.*), and forms 33 and 34, pamphlet of the drain laws.

The other groups of errors may be considered together. The opinion of the circuit judge from which we have quoted is fully justified by the record as to what was done and not done. In the return of the judge of probate appears the following:

"Says that objectors to the drain did not ask the probate judge to himself hear testimony as to the sufficiency of the outlet of said Deer Creek drain, but that said probate judge did not deny the right of the demandants to offer proof concerning the insufficiency of the outlet before the jury. The probate judge then and there stating that in his judgment he, said probate judge, had no right to hear the matter and substitute his judgment for that of the drain commissioner, but that he then and there stated to the demandants that proof as to the sufficiency or insufficiency of the outlet of the drain could properly be made before commissioners or a jury as bearing on the ne-

cessity of the drain. He admits that he also stated in that connection that under certain circumstances such proof could be properly made in a court of chancery."

There was an abundant opportunity to offer proof as to the sufficiency of the outlet, but the petitioners did not offer such proof.

The record also shows as follows:

The probate judge on June 19th asked all the jurors to come to the court house on June 21st, where the probate judge said:

"Since the meeting of the jury in the above matter, on June 16th, A. D. 1917, at the probate office in the city of Mason, it has come to my attention that the provisions of the law required that the taking of testimony in this case be begun within ten days from June 16th, A. D. 1917, the day the jury was sworn in. While I regret that it may cause the jury some inconvenience it is necessary to the validity of these proceedings that the taking of testimony be begun not later than Monday, June 25th, A. D. 1917."

This explains the reason which actuated the probate judge.

The record also shows petitioners were at once advised of what was done. It shows no testimony was offered or taken on the days when the jurors were viewing the line of the drain. Written notice was served on the petitioners June 21st that testimony would be taken on June 25th and on June 30th. They had a stenographer present who took down the testimony, four of the petitioners were sworn as witnesses on June 30th. They had full notice that they could be heard on June 25th, June 26th, and June 30th, when other testimony was taken, but offered no testimony themselves, but evidently prefer to stand upon what they call their legal rights.

This court has had occasion to review drain proceedings many times. Some of the cases are *Dunning*

v. *Drain Commissioner,* 44 Mich. 518; *Wolpert* v. *Newcomb,* 106 Mich. 357; *Brady* v. *Hayward,* 114 Mich. 326.

In the first of these cases Justice COOLEY, speaking for the court, said:

"All the errors assigned, relate to the finding of the jury and the previous proceedings, and with the exception of those which relate to the giving of notice to the parties concerned and the filing of proof thereof, are somewhat technical. It appears from the return that plaintiff in certiorari had actual notice and took part in the proceedings before and at the time when the jury was struck, and there is no reason to suppose he has been taken by surprise in any of the proceedings. We are not inclined to reverse such proceedings except for very substantial faults, and the present case, in our opinion, does not call for our intervention."

The other opinions are in harmony with this language of the learned jurist.

The judgment of the lower court is affirmed with costs to the appellee.

BIRD, C. J., and OSTRANDER, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.